DECISION AND JUDGMENT ENTRY
This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas. There, following a bench trial, the court ruled in favor of sellers in a suit brought by buyer over the purchase of a boat. Because we conclude that the trial court properly ruled that Ohio's boat title statute confers no independent right of contract rescission and the court properly concluded that the plaintiff failed to prove fraud or the existence of a warranty, we affirm.
In April 1998, appellant, Melvin G. Shook, purchased a used 1984 twenty-seven foot Baha boat from appellee William I. Miller. The transaction was brokered by appellee Counterman Marine Sales and Service, Inc. Appellee Larry Counterman is president of the marine dealership, but was sued individually in his capacity as a "marine surveyor."[1]
On April 1, 1998, appellant paid appellee Counterman Marine in full for the boat and, in turn, received a bill of sale. A Counterman Marine employee delivered the boat to appellant's dock on April 28, 1998, and took appellant on a "sea trial." The "sea trial" revealed certain defects, which Counterman Marine repaired. One of these defects was a leaking "shaft log".
At some point after mid-June 1998, appellant again complained that the boat was leaking. Appellee Larry Counterman examined the boat and discovered that the leak was the result of the collapse of a "stringer" which held the boat's inboard engine in place. The parties agree that the collapsed stringer made the boat unseaworthy and the cost of its repair could exceed the boat's value.
On July 17, 1998 appellant, through counsel, sent appellee Counterman Marine a letter notifying it that he was rescinding the purchase contract because of appellee Counterman Marine's failure to timely deliver the certificate of title. On July 20, 1990, appellee Counterman Marine tendered to appellant a certificate of title, which was refused.
On September 9, 1998, appellant sued, seeking rescission of the purchase agreement and alleging breach of warranty and/or fraud in the inducement. The matter proceeded to a bench trial, following which the court found in favor of appellees on all claims.
Appellant now brings this appeal, setting forth the following three "Questions Presented" which we shall construe as assignments of error:
 "I. Whether Appellant has the right to rescind the sale of the boat when Appellee failed to deliver the certificate of title to the watercraft for four (4) months after Appellant had paid the full purchase price.
 "II. Whether R.C. § 1302.53 is the appropriate provision to determine risk of loss when Appellee breached the sales agreement by failing to deliver the certificate of title.
 "III. Whether the parol evidence rule prohibits Appellant from establishing fraud when the parties do not have a final, integrated agreement."
 I.
We shall first deal with appellant's third assignment of error.
Both appellant's fraud and breach of warranty claims are premised on his assertion that, prior to contracting, a representative of Counterman Marine told him that the company had checked out the boat and that it was "a good boat." The Counterman employee, who was alleged to have made this representation, denied making the statement.
The trial court applied the parol evidence rule, excluding from its consideration the purported representations of appellee Counterman Marine's employee. Absent such representations, the trial court concluded that appellant's fraud claim must fail. Additionally, since the written purchase agreement in this matter expressly disclaimed any warranties which were not part of that document, the court concluded that appellant's breech of warranty claim must also fail.
 "The Parol Evidence Rule was developed centuries ago to protect the integrity of written contracts. Shanker, Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court) (1989), 23 Akron L.Rev. 2. The parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements. Id. When two parties have made a contract and have expressed it in a writing to which they both have assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing. 3 Corbin, Corbin on Contracts (1960) 357, Section 573. See, also, Charles A. Burton, Inc. v. Durkee (1952), 158 Ohio St. 313, 49 Ohio Op. 174, 109 N.E.2d 265." _Ed Schory Sons, Inc. v. Society National Bank (1996), 75 Ohio St.3d 433, 440
In addition to the disclaimer of warranties, the purchase agreement appellant signed contained a provision that, "THE ENTIRE AGREEMENT IS EMBODIED IN THIS WRITING." This integration clause is express and unambiguous; therefore, a prior purported representation in contradiction of this provision is not admissible. Busler v. D H Manufacturing,Inc. (1992) 81 Ohio App.3d 385, 390, citing 1 Restatement of Laws 2d, Contracts (1981), 136, Section 215.
In this matter, the parties had a final, integrated agreement. Consequently, the trial court did not err in applying the parol evidence rule to a purported representation outside that agreement. Accordingly, appellant's third assignment of error is not well-taken.
 II.
Despite all the discussion of hidden defects in the boat, appellant asserts as his sole ground for "rescission" appellee Counterman Marine's failure to timely deliver a certificate of title. Appellant's argument is that because R.C. 1548.03 and 1548.04 mandate that the seller of a watercraft deliver a certificate of title to the buyer, the failure of a seller to deliver such title is a material breach of the sales contract for which rescission of the contract may be had.
Appellant specifically notes that R.C. 1548.03 directs that
 "No person acquiring a watercraft or outboard motor from the owner thereof, * * * shall acquire any right, title, claim, or interest in or to such watercraft or outboard motor until such person has had issued to him a certificate of title to such watercraft or outboard motor, or delivered to him a manufacturer's or importer's certificate for it."
Appellant, however, offers no authority to support his proposition that a failure to deliver a title to a watercraft automatically gives the purchaser a right of rescission or right to withdraw acceptance. Indeed, the case to which appellant does refer, a 1970 decision of the Kettering Municipal Court, specifically states that the rights of a buyer and seller are, "* * * not determined by the delivery of a certificate of title, but by basic contract law * * *." Few v. Esselman (1970),24 Ohio Misc. 175, 176.
As the trial court noted, "rescission" in the context of negating a contract is a somewhat antiquated term. Ohio has blended contract rescission into the Uniform Commercial Code concept of revocation of acceptance. Aluminum Line Products v. Rolls-Royce Motors (1993),66 Ohio St.3d 539, 543, citing Official Comment 1 to UCC 2-608. The Ohio statutory adoption of UCC 2-608 is R.C.1302.66, which provides;
 "(A) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:
 "(1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
 "(2) without discovery of such non-conformity of his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
 "(B) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
 "(C) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."
The non-conformity of which appellant complains was the failure of appellee Counterman Marine to deliver the boat's certificate of title. The impairment of value to appellant was, according to his testimony, that without a title he could not register the boat and without registration he could not enter a fishing tournament. However, appellant concedes that appellee Counterman Marine issued him a bill of sale which, under R.C. 1548.03, permitted him to use the boat for up to thirty days. When appellee Counter Marine failed to produce a certificate within thirty days, it reissued the bill of sale with a date of May 20.[2] On July 17, upon receipt of appellant's counsel's letter seeking to rescind the purchase, appellee Counterman Marine tendered a certificate of title within days.
The trial court implicitly found that appellant failed to prove that the nonconformity, represented by the lack of a certificate of title, was not seasonably cured. Explicitly, the court found that appellant had never presented any of appellees with notice of revocation of acceptance on any other ground. The court, therefore, concluded that appellant's "rescission" claim must fail. These findings are supported by complete creditable Cevidence, see C.E. Morris v. Foley Const. Co. (1978)54 Ohio St.2d 279, syllabus, and will not be disturbed on appeal.
Accordingly, appellant's first and second assignments of error are not well-taken.
On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ____________________________ James R. Sherck, J.
 Melvin L. Resnick, J., Mark L. Pietrykowski, J., CONCUR.
[1] In his answer, appellee Counterman states that a "marine surveyor" is one who provides opinions on the condition of watercraft, a function he denies performing here.
[2] The legality of post-dating a bill of sale is not before us.